IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LARRY NEWBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:11-CV-286(MTT) |
| | ) |
| GRAPHIC PACKAGING | ) |
| INTERNATIONAL, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

This matter is before the Court on the Defendant's Motion to Dismiss. (Doc. 5). For the reasons set forth below, the Motion is granted.

### I.  Factual and Procedural Background

The facts giving rise to this action are largely undisputed. Plaintiff Larry Newberry brings this lawsuit against his former employer, Defendant Graphic Packaging International, Inc. ("GPI"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1100-1461. The Plaintiff seeks the recovery of disability benefits from the Riverwood International Hourly Retirement Plan (the "Plan"). (Doc. 5-3). The Plan is an ERISA employee pension benefit plan pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and is sponsored by GPI. The Plaintiff claims GPI violated his rights under the Plan, ERISA, and the United States Constitution when GPI denied his application for disability retirement benefits.

GPI sponsors the Plan for the benefit of its current and former employees and their families. The Plan is funded by payments from GPI, and provides disability retirement benefits pursuant to the terms and conditions of the Plan. The Plan administrator and named fiduciary is the Retirement Committee. (Doc. 5-3 at 41). GPI's Board of Directors appoints the members of the Retirement Committee, who, pursuant to the language of the Plan, serve "at the pleasure of the GPI Board of Directors." (Doc. 5-3 at 41).

Under the terms and conditions of the Plan, as a condition of receiving disability retirement benefits, a "Member must file an application requesting a determination of Total and Permanent Disability with the Retirement Committee prior to the Member's termination of employment." (Doc. 5-3 at 23). The Summary Plan Description ("SPD") contains this same requirement: "You qualify for disability benefits from the retirement plan if … you apply for disability retirement prior to your termination of employment."[1] (Doc. 5-4 at 11).

The Plaintiff was a participant (a "Member") in the Plan. (Doc. 1 ¶ 8). On June 15, 2006, the Plaintiff became disabled on account of work-related injuries, for which he received Worker's Compensation benefits through GPI. His last day of work at GPI was June 20, 2006.

---

[1] The Plan, the SPD, and several other documents are properly before the Court on GPI's Motion to Dismiss because the documents were referenced in the Plaintiff's complaint, they are central to the Plaintiff's claims, and their authenticity is not in dispute. *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). In addition, the documents were attached to GPI's Motion to Dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2004).

The Plaintiff was also a member of a union, and the terms and conditions governing his employment were set forth in a collective bargaining agreement (the "CBA"). (Doc. 5-5). The CBA, which was not expressly incorporated into the Plan or SPD, states that "[a]ny employee disabled from work for twenty-four (24) months on account of injury shall be conclusively deemed to have terminated his/her employment with the company…." (Doc. 5-5 at 8). Pursuant to the CBA, the Plaintiff was terminated from employment with GPI on June 22, 2008, after he had been disabled from work for 24 months on account of his injuries. (Doc. 1 ¶ 13). The Plaintiff acknowledges that he received after the fact notice of his termination. (Doc. 1 ¶ 13).

On August 8, 2009, the Plaintiff applied for disability retirement benefits. (Doc. 5-6). The Retirement Committee denied his claim by letter dated October 2, 2009, which the Plaintiff received October 6, 2009. (Doc. 5-7). The stated reason for the denial of the Plaintiff's claim was that he failed to apply for disability retirement benefits prior to his termination, in accordance with the requirements of both the Plan and the SPD. The claim denial letter informed the Plaintiff that he had 180 days within which to appeal his claim denial. On March 28, 2011, 538 days after receiving the claim denial letter, the Plaintiff filed an appeal. (Doc. 5-8). The basis for the Plaintiff's appeal was that GPI had actual knowledge that the Plaintiff was out of work, that no one from GPI notified the Plaintiff that he was going to be terminated, and that the Plaintiff therefore had no opportunity to apply for disability benefits before his termination. The Retirement Committee denied the Plaintiff's appeal on the same grounds as its initial denial and on the additional ground that the appeal was untimely. (Doc. 5-9).

The Plaintiff filed his complaint in this action on July 22, 2011.  In Count One, the Plaintiff claims benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Count Two alleges that, by denying his claim for benefits, GPI violated the Plaintiff's substantive due process rights under the United States Constitution.  Finally, in Count Three, the Plaintiff claims GPI breached its fiduciary duty by not providing advance notice of his termination, in violation of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  GPI has moved to dismiss all three counts.

## II.     Standard of Review

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

### III.     Discussion

It is well-established in the Eleventh Circuit that plaintiffs in ERISA cases must exhaust all administrative remedies under their ERISA-governed plans before they bring suit in federal court.  *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).  The exhaustion doctrine is strictly enforced and applies equally to claims for benefits under section 502(a)(1)(B) and claims for breach of fiduciary duty under section 502(a)(3).  *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223-24 (11th Cir. 2008).  In very limited circumstances, "a district court has the sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place."  *Perrino v. S. Bell. Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (quotation marks and citations omitted).

Generally, when faced with allegations of failure to exhaust, it is incumbent upon the Plaintiff to make a "clear and positive showing of futility" before the Court will waive the administrative exhaustion requirement.  *Springer*, 908 F.2d at 901 (quotation marks and citation omitted).  In the Eleventh Circuit, the concept of futility does not depend upon the likely outcome of the appeal.  Rather, "courts have consistently equated the concept of futility with the inability of a litigant to present his or her claim for administrative review and to have that claim considered, without reference to the probable outcome of the administrator's review."  *Spivey v. Southern Co.*, 427 F. Supp. 2d 1144, 1155 (N.D. Ga. 2006) (citing *Perrino*, 209 F.3d at 1318).

Here, it is undisputed that the Plaintiff appealed the denial of his benefits claim.  (Doc. 5-8).  It is also undisputed, however, that the Plaintiff did not file his appeal until

March 28, 2011, 538 days after he received his initial claim denial letter.  In that letter, the Plaintiff was given explicit instructions that if he disagreed with the Retirement Committee's decision, he could "appeal the decision by submitting, in writing, a request for review within 180 days after receipt" of the claim denial letter.  (Doc. 5-7 at 2).  The Plaintiff was given the additional instruction that, if his claim was denied on appeal, he then had "the right to bring [a] civil action against the Plan under section 502(a) of ERISA."  (Doc. 5-7 at 2).  The requirement that the Plaintiff appeal his claim denial within the designated 180-day time period also appears, in unambiguous language, in the SPD: "[Y]ou may appeal the decision by notifying the Plan Administrator in writing within 60 days (180 days for a disability retirement claim) of the date you receive notice of denial."  (Doc. 5-4 at 22).  Accordingly, both the claim denial letter and the SPD set forth in sufficient detail the necessary information regarding how, and more importantly when, to file an appeal under the Plan's terms.

Despite these warnings, the Plaintiff did not file his appeal until over eleven months after the expiration of the 180 day period.  In response to GPI's Motion, he offers no explanation for the untimely filing of his administrative appeal.  As a result, there is no evidence that the Plaintiff was in any way prevented from or denied meaningful access to the internal administrative review process.

At least one court has held that when a plan administrator addresses an untimely appeal on the merits and denies the appeal, the plaintiff has established that fully exhausting her claim would have been futile.  *Ayers v. Maple Press Co.*, 168 F. Supp. 2d 349 (M.D. Pa. 2001).  Under the facts of this case, however, the Court cannot adopt this exception.  First, it is unlikely that the Eleventh Circuit would endorse this exception,

especially in light of that court's reluctance to excuse exhaustion absent "exceptional circumstances."  *Perrino*, 209 F.3d at 1318.  Second, "[i]t would hardly make sense to permit the filing of an appeal [nearly] one year late in light of the internal claims procedures' aims of consistency and economy.  Haphazard waiver of time limits would increase the probability of inconsistent results where one claimant is held to the limitation, and another is not.  Similarly, permitting appeals well after the time for them has passed can only increase the cost and time of the settlement process."  *Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir. 1998).[2]

For the reasons set forth above, the Plaintiff failed to properly exhaust his administrative remedies prior to filing this action, and he has not made the "clear and positive showing" necessary to establish that his case falls within any applicable exception.  Accordingly, GPI's Motion is **granted**, and this action is **dismissed with prejudice**.

**SO ORDERED,** this 26th day of January, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[2] Moreover, a finding of futility based on a plan administrator's decision to rule on the merits of a plaintiff's untimely appeal may discourage plan administrators from undertaking similar review efforts in the future.